## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CHAILE STEINBERG, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. _____ |
| | ) | JURY TRIAL DEMANDED |
| SURGICAL CARE AFFILIATES, INC., THOMAS C. GEISER, KENNETH R. GOULET,  ANDREW HAYEK, FREDERICK A. HESSLER, SHARAD MANSUKANI,  JEFFREY K. RHODES, MICHAEL A. SACHS, TODD B. SISITSKY, LISA SKEETE TATUM, UNITEDHEALTH GROUP INCORPORATED, SPARTAN MERGER SUB 1, INC., and SPARTAN MERGER SUB 2, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) | CLASS ACTION |
| Defendants. | ) | |

### COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by her undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1.     This action stems from a proposed transaction announced on January 9, 2017 (the "Proposed Transaction"), pursuant to which Surgical Care Affiliates, Inc. ("Surgical Care" or the "Company") will be acquired by UnitedHealth Group Incorporated and its affiliates (collectively, "UnitedHealth") through an exchange offer (the "Offer") currently scheduled to expire on March 21, 2017.

2.     On January 7, 2017, Surgical Care's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of

reorganization (the "Merger Agreement") with UnitedHealth Group Incorporated, Spartan Merger Sub 1, Inc., and Spartan Merger Sub 2, LLC.  Pursuant to the terms of the Merger Agreement, shareholders of Surgical Care will receive $11.40 per share in cash and shares of UnitedHealth common stock.[1]

3.    On February 21, 2017, defendants filed a Solicitation/Recommendation Statement and a Form S-4 Registration Statement (together, the "Solicitation Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.    The Solicitation Statement, which recommends that Surgical Care's stockholders tender their shares in the Offer, omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Solicitation Statement.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(e), 14(d), and 20(a) of the 1934 Act and Rule 14a-9.

6.    This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of

---

[1] Surgical Care stockholders will receive a number of shares of UnitedHealth common stock equal to the amount obtained by dividing $45.60 by the volume weighted average of the closing sale prices per share of UnitedHealth common stock on the New York Stock Exchange, as reported in *The Wall Street Journal* on each of the five full consecutive trading days ending on and including the third business day prior to the final expiration date of the Offer, together with cash in lieu of any fractional shares of UnitedHealth common stock.

jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.    Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.    Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Surgical Care common stock.

9.    Defendant Surgical Care is a Delaware corporation and maintains its principal executive offices at 510 Lake Cook Road, Suite 400, Deerfield, IL 60015.  Surgical Care's common stock is traded under the ticker symbol "SCAI."

10.    Defendant Thomas C. Geiser ("Geiser") has served as a director of Surgical Care since 2007.  According to the Company's website, Geiser is Chair of the Transactions Committee and Chair of the Regulatory Compliance Committee.

11.    Defendant Kenneth R. Goulet ("Goulet") has served as a director of Surgical Care since 2016.

12.    Defendant Andrew Hayek ("Hayek") is a current director of Surgical Care as well as the Company's Chief Executive Officer ("CEO") and Chairman of the Board.

13.    Defendant Frederick A. Hessler ("Hessler") has served as a director of Surgical Care since 2013.  According to the Company's website, Hessler is Chair of the Audit Committee.

14.    Defendant Sharad Mansukani ("Mansukani") has served as a director of Surgical Care since 2007.  According to the Company's website, Mansukani is a member of the Regulatory Compliance Committee.

15.    Defendant Jeffrey K. Rhodes ("Rhodes") has served as a director of Surgical Care since 2010.  According to the Company's website, Rhodes is Chair of the Nominating and

Governance Committee, a member of the Compensation Committee, and a member of the Transactions Committee.

16.     Defendant Michael A. Sachs ("Sachs") has served as a director of Surgical Care since September 2015.   According to the Company's website, Sachs is a member of the Compensation Committee.

17.     Defendant Todd B. Sisitsky ("Sisitsky") has served as a director of Surgical Care since 2007.   According to the Company's website, Sisitsky is Chair of the Compensation Committee and a member of the Nominating and Governance Committee.

18.     Defendant Lisa Skeete Tatum ("Tatum") has served as a director of Surgical Care since October 2014.   According to the Company's website, Tatum is a member of the Audit Committee.

19.     The defendants identified in paragraphs 10 through 18 are collectively referred to herein as the "Individual Defendants."

20.     Defendant UnitedHealth Group Incorporated is a Delaware corporation and a party to the Merger Agreement.

21.     Defendant Spartan Merger Sub 1, Inc. is a Delaware corporation, a wholly-owned subsidiary of UnitedHealth Group Incorporated, and a party to the Merger Agreement.

22.     Defendant Spartan Merger Sub 2, LLC is a Delaware limited liability company, a wholly-owned subsidiary of UnitedHealth Group Incorporated, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

23.     Plaintiff brings this action as a class action on behalf of herself and the other public stockholders of Surgical Care (the "Class").   Excluded from the Class are defendants

herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

24.     This action is properly maintainable as a class action.

25.     The Class is so numerous that joinder of all members is impracticable.  As of January 5, 2017, there were approximately 40,499,340 shares of Surgical Care common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

26.     Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

27.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class.  Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

28.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

29.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

30.     Surgical Care is a leader in the outpatient surgery industry and strategically partners with health plans, medical groups, and health systems across the country to develop and optimize surgical facilities.

31.     The Company operates 205 surgical facilities, including ambulatory surgery centers and surgical hospitals, in partnership with approximately 3,000 physicians.

32.     On August 2, 2016, Surgical Care issued a press release wherein it reported its financial results for the second quarter ended June 30, 2016.  Among other things, the Company reported that, for the three months ended June 30, 2016, Surgical Care's net operating revenue was $299.9 million, an increase of 18.2% over the prior-year second quarter.

33.     On November 1, 2016, Surgical Care issued a press release wherein it reported its financial results for the third quarter ended September 30, 2016.  The Company reported that, for the three months ended September 30, 2016, Surgical Care's net operating revenue was $322.8 million, an increase of 25.2% over the prior-year third quarter.  Additionally, during the third quarter of 2016, the Company acquired six new facilities.

34.     In the November 1, 2016 press release, the Company also reported that it entered into the first phase of a national value-based agreement with a leading health plan, which is structured in phases over a multi-year implementation period, and includes multiple specialties, including high acuity case types.  Moreover, Surgical Care reported that total joint replacements

more than doubled in 2016 compared to the first nine months of 2015.

35.     With respect to the results, Individual Defendant Hayek commented:

> We are pleased with our clinical, strategic and financial performance. Patient care is our first priority, and our success is driven by our outstanding physicians and teammates, who continue to achieve strong clinical quality and patient satisfaction results[.] From a strategic standpoint, we continue to partner with health plans, medical groups and health systems, and our development pipeline remains strong. We are grateful to our physicians and teammates across the country who are dedicated to outstanding patient care and to building our SCA community.

36.     Nevertheless, on January 7, 2017, the Board caused Surgical Care to enter into the Merger Agreement, pursuant to which the Company will be acquired by UnitedHealth for inadequate consideration.

37.     The Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.   Section 6.3(a) of the Merger Agreement states:

> (a) The Company shall and shall cause each of its Subsidiaries and its and their respective officers, directors, managers and employees and shall instruct and cause its and its Subsidiaries' respective agents, financial advisors, investment bankers, attorneys and accountants (such officers, directors, managers, employees, agents, financial advisors, investment bankers, attorneys and accountants in their capacity as such, collectively, "Representatives"): (i) to immediately cease and cause to be terminated any solicitation, discussions or negotiations with any Persons (other than Parent and its Representatives) that are ongoing with respect to a Company Takeover Proposal and (ii) not to, directly or indirectly through intermediaries, (A) solicit, initiate, knowingly encourage (including by way of furnishing non-public information relating to the Company or any of its Subsidiaries) or knowingly facilitate any inquiries regarding, or the making of any proposal or offer that constitutes, or could reasonably be expected to lead to, a Company Takeover Proposal, (B) conduct, engage in, continue or otherwise participate in any discussions or negotiations regarding, or furnish to any other Person any information in connection with, or for the purpose of

knowingly encouraging or knowingly facilitating, a Company Takeover Proposal (other than, solely in response to an unsolicited inquiry, to refer the inquiring Person to this Section 6.3 and to limit its conversation or other communication exclusively to such referral), (C) approve, endorse, recommend or enter into, or propose to approve, endorse, recommend or enter into, any letter of intent, term sheet, acquisition agreement, merger agreement, joint venture agreement or similar document, agreement, commitment or agreement in principle (whether written, oral, binding or non-binding) with respect to a Company Takeover Proposal, (D) amend or grant any waiver or release under any standstill or similar agreement with respect to any class of equity securities of the Company or any of its Subsidiaries, (E) approve any transaction involving the Company or any of its Subsidiaries under or any third party (other than Parent or Purchaser) becoming an "interested stockholder" of the Company or any of its Subsidiaries under, Section 203 of the DGCL or Article XIII of the Company Certificate (except a transaction involving Parent, Purchaser or their Affiliates) or (F) resolve to do any of the foregoing.

38.     Further, the Company must promptly advise UnitedHealth of any proposals or inquiries received from other parties.  Section 6.3(d) of the Merger Agreement states:

> The Company shall promptly (and in no event later than twenty-four (24) hours after receipt) notify Parent in writing in the event that the Company or any of its Representatives receives a Company Takeover Proposal or a request for information relating to the Company or its Subsidiaries that contemplates a Company Takeover Proposal, including the identity of the Person making the Company Takeover Proposal and the material terms and conditions thereof (including an unredacted copy of such Company Takeover Proposal or, where such Company Takeover Proposal is not in writing, a description of the terms thereof). The Company shall promptly (and in no event later than twenty-four (24) hours after receipt) provide to Parent copies of any proposals, indications of interest and/or draft agreements relating to such Company Takeover Proposal. The Company shall provide Parent with at least two (2) Business Day's prior written notice of any meeting of the Company Board of Directors (or such lesser notice as is provided to members of the Company Board of Directors) at which the Company Board of Directors is reasonably expected to consider any Company Takeover Proposal. The Company agrees that it and its Subsidiaries will not enter into any agreement with any Person subsequent to the date of this Agreement that prohibits the Company from providing any information to Parent in accordance with, or otherwise complying with, this Section 6.3.

39.     Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants UnitedHealth a "matching right" with respect to any

"Superior Proposal" made to the Company.  Section 6.3(f) of the Merger Agreement provides:

> (f) Notwithstanding anything to the contrary contained in this Agreement, prior to the Acceptance Time, but not after, the Company Board of Directors may, in respect of a bona fide, written Company Superior Proposal that did not result from a breach of this Section 6.3, (1) make a Company Adverse Recommendation Change or (2) terminate this Agreement in accordance with Section 8.1(f) in order to enter into a definitive agreement for such Company Superior Proposal, in either case if and only if, prior to taking such action, the Company Board of Directors has determined in good faith, after consultation with its independent financial adviser and outside legal counsel, that the failure to take such action would be inconsistent with the directors' fiduciary duties under applicable Law; provided, however, that, prior to taking either such action, (w) the Company has given Parent at least five (5) Business Days' prior written notice of its intention to take such action, including the terms and conditions of and the basis for such action, and the identity of the Person making, any such Company Superior Proposal and has contemporaneously provided to Parent a copy of the Company Superior Proposal or any proposed Company Acquisition Agreements and a copy of any related financing commitments in the Company's possession (or, in each case, if not provided in writing to the Company, a written summary of the terms thereof), (x) the Company has negotiated, and has caused its Representatives to negotiate, in good faith with Parent during such five (5) Business Day period, to the extent Parent wishes to negotiate, concerning any revisions to the terms of this Agreement proposed by Parent, and (y) following the end of such five (5) Business Days' notice period, the Company Board of Directors shall have determined, after consultation with its independent financial advisor and outside legal counsel, and giving due consideration to the revisions to the terms of this Agreement to which Parent has committed in writing, that the Company Superior Proposal would nevertheless continue to constitute a Company Superior Proposal (assuming the revisions committed to by Parent in writing were to be given effect) and that the failure to take such action would be inconsistent with the directors' fiduciary duties under applicable Law, and (z) in the event of any change to any of the financial terms (including the form, amount and timing of payment of consideration) or any other material terms of such Company Superior Proposal, the Company shall, in each case, have delivered to Parent an additional notice consistent with that described in clause (w) above of this proviso and a new notice period under clause (w) of this proviso shall commence (except that the five (5) Business Day notice period referred to above shall instead be equal to two (2) Business Days) during which time the Company shall be required to comply with the requirements of this Section 6.3(f) anew with respect to such additional notice, including clauses (w) through (z) above of this proviso. Notwithstanding anything to the contrary contained herein, neither the Company nor any of its Subsidiaries shall enter into any Company Acquisition Agreement unless this Agreement has been terminated in accordance with its terms and the Termination Fee has been paid in the manner provided in Section 8.3.

40.     Further locking up control of the Company in favor of UnitedHealth, the Merger Agreement provides for a "termination fee" of $90 million, payable by the Company to UnitedHealth if the Individual Defendants cause the Company to terminate the Merger Agreement.

41.     By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

42.     Additionally, TPG FOF V-A, L.P., TPG FOF V-B, L.P., and TPG Partners V, L.P. (the "TPG Stockholders") entered into a tender and support agreement, pursuant to which the TPG Stockholders have agreed to tender their shares in the Offer.    Accordingly, approximately 30.4% of the Company's shares are already locked up in favor of the Proposed Transaction.[2]

43.     The merger consideration to be paid to plaintiff and the Class in the Proposed Transaction is inadequate.

44.     Among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

45.     Further, the merger consideration fails to adequately compensate the Company's stockholders for the significant synergies resulting from the merger.

46.     Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

---

[2] The TPG Stockholders are affiliates of TPG Global, LLC, which is an affiliate of TPG Capital, LP.  Individual Defendants Sisitsky and Rhodes are partners of TPG Capital, LP.

47.     Meanwhile, certain of the Company's officers and directors stand to receive substantial benefits as a result of the Proposed Transaction.

48.     For example, pursuant to an employment agreement entered into with UnitedHealth, Individual Defendant Hayek will serve as CEO following the close of the Proposed Transaction.

49.     Similarly, Michael Rucker ("Rucker"), Surgical Care's Executive Vice President and Chief Operating Officer, and Richard Sharff, Jr. ("Sharff"), Surgical Care's Executive Vice President, Corporate Secretary, and General Counsel, will retain their positions following the merger.

***The Solicitation Statement Omits Material Information, Rendering It False and Misleading***

50.     Defendants filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.

51.     The Solicitation Statement omits material information regarding the Proposed Transaction, which renders the Solicitation Statement false and misleading.

52.     The Solicitation Statement omits material information regarding Surgical Care's financial projections and the financial analyses performed by the Company's financial advisor, J.P. Morgan Securities LLC ("J.P. Morgan"), in support of its so-called fairness opinion.

53.     With respect to Surgical Care's financial projections, the Solicitation Statement fails to disclose: (i) a reconciliation of all non-GAAP to GAAP metrics; (ii) interest; (iii) taxes; (iv) depreciation and amortization; (v) stock-based compensation; (vi) income attributable to non-controlling interests and equity; (vii) capital expenditures; (viii) expenditures on acquisitions and de novo facilities; and (ix) changes in net working capital.

54.     With respect to J.P. Morgan's *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose:  (i) the terminal period unlevered free cash flow estimates for Surgical Care to which the selected perpetuity growth rate range was applied; (ii) the resulting range of terminal values calculated by J.P Morgan; (iii) the inputs and assumptions used to calculate the discount rate range of 6.50% to 7.50%; and (iv) the cash flows generated by potential tax savings resulting from utilization of the net operating losses of Surgical Care as provided by Company management, and the resulting present value of these tax savings.

55.     The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.  Moreover, when a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

56.     The omission of this material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following sections of the Solicitation Statement: (i) "Background of the Transaction"; (ii) "SCA's Reasons for the Transactions; Recommendation of the Board of Directors of SCA"; (iii) "Opinion of SCA's Financial Advisor"; and (iv) "Certain Unaudited Prospective Financial Information of SCA."

57.     The Solicitation Statement also omits material information regarding potential conflicts of interest of the Company's officers and directors.

58.     Specifically, the Solicitation Statement fails to disclose the timing and nature of all communications regarding future employment and/or directorship of Surgical Care's officers

and directors, including who participated in all such communications, particularly when UnitedHealth first expressed that Surgical Care executives may be retained following a merger and the circumstances surrounding such expression.

59.     Additionally, while the Solicitation Statement provides that Individual Defendant Hayek, Rucker and Sharff entered into employment agreements with UnitedHealth, pursuant to which they will retain their employment positions following the close of the Proposed Transaction, the Solicitation Statement fails to disclose when the terms of such agreements were negotiated.

60.     Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.  This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

61.     The omission of this material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following sections of the Solicitation Statement: (i) "Background of the Transaction"; (ii) "SCA's Reasons for the Transactions; Recommendation of the Board of Directors of SCA"; and (iii) "Interests of Certain Persons in the Transactions."

62.     The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Surgical Care's stockholders.

## COUNT I

### (Claim for Violation of Section 14(e) of the 1934 Act Against Defendants)

63.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64.     Section 14(e) of the 1934 Act states, in relevant part, that:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

65.     Defendants disseminated the misleading Solicitation Statement, which contained statements that, in violation of Section 14(e) of the 1934 Act, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not misleading.

66.     The Solicitation Statement was prepared, reviewed, and/or disseminated by defendants.

67.     The Solicitation Statement misrepresented and/or omitted material facts in connection with the Proposed Transaction as set forth above.

68.     By virtue of their positions within the Company and/or roles in the process and the preparation of the Solicitation Statement, defendants were aware of this information and their duty to disclose this information in the Solicitation Statement.

69.     The omissions in the Solicitation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their shares in connection with the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

70.     Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Solicitation Statement, causing statements therein to be materially incomplete and misleading.

71.     By reason of the foregoing, defendants violated Section 14(e) of the 1934 Act.

72.     Because of the false and misleading statements in the Solicitation Statement, plaintiff and the Class are threatened with irreparable harm.

14

73.     Plaintiff and the Class have no adequate remedy at law.

## COUNT II

**(Claim for Violation of 14(d) of the 1934 Act Against Defendants)**

74.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

75.     Section 14(d)(4) of the 1934 Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

76.     Rule 14d-9(d) states, in relevant part:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

77.     The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

78.     Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and misleading.

79.     The omissions in the Solicitation Statement are material to plaintiff and the Class, and they will be deprived of their entitlement to make a fully informed decision with respect to the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the

expiration of the Offer.

80.     Plaintiff and the Class have no adequate remedy at law.

## COUNT III

### (Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and UnitedHealth)

81.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

82.     The Individual Defendants and UnitedHealth acted as controlling persons of Surgical Care within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of Surgical Care and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

83.     Each of the Individual Defendants and UnitedHealth was provided with or had unlimited access to copies of the Solicitation Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

84.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Solicitation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly connected with and involved in the making of the Solicitation Statement.

16

85.     UnitedHealth also had direct supervisory control over the composition of the Solicitation Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Solicitation Statement.

86.     By virtue of the foregoing, the Individual Defendants and UnitedHealth violated Section 20(a) of the 1934 Act.

87.     As set forth above, the Individual Defendants and UnitedHealth had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.

88.     As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

89.     Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment and relief as follows:

A.     Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to file a Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Declaring that defendants violated Sections 14(e), 14(d), and 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.      Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: February 28, 2017                **RIGRODSKY & LONG, P.A.**

By:   */s/ Brian D. Long*
      Seth D. Rigrodsky (#3147)
      Brian D. Long (#4347)
      Gina M. Serra (#5387)
      2 Righter Parkway, Suite 120
      Wilmington, DE 19803
      (302) 295-5310

      *Attorneys for Plaintiff*